UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES U. PAYNE,

      Plaintiff,

v.

      Case No. 2:22-cv-12574
      District Judge Mark A. Goldsmith
      Magistrate Judge Kimberly G. Altman

BROADWORTH, SILVEUS,
STOETZEL, PANONNE, MILLER,
TOWNLEY, CONLEY,
T. ANDERSON, and SERBANTEZ,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## TO GRANT IN PART AND DENY IN PART
## DEFENDANTS' MOTION TO DISMISS (ECF No. 24)[1]

### I.      Introduction

This is a civil rights case under 42 U.S.C. § 1983.  Plaintiff James U. Payne

(Payne)[2] is suing nine Jackson County Jail deputies: (1) Broadworth; (2) Silveus;

(3) Stoetzel; (4) Panonne; (5) Miller; (6) Townley; (7) Conley; (8) T. Anderson

(Anderson); and (9) Serbantez.  Payne claims that these deputies violated his

---

[1] Upon review of the motion, the undersigned deemed this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).  A notice of determination without oral argument was issued on April 24, 2023.  (ECF No. 49).

[2] Payne filed his complaint *pro se*, but an attorney has since entered an appearance on Payne's behalf.  *See* ECF No. 44.

1

constitutional rights under the Eighth and Fourteenth Amendments while he was either a pretrial detainee or otherwise incarcerated in the Jackson County Jail.  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 12).

Before the Court is defendants' joint motion to dismiss.  (ECF No. 24).  The motion is fully briefed.  (ECF No. 38, 42, 46, 50).[3]  For the reasons that follow, the undersigned RECOMMENDS that the motion be GRANTED IN PART and DENIED IN PART.  Specifically, the motion should be denied as to Payne's claims against defendants in their individual capacities and Payne should be granted leave to amend the complaint to articulate his claims more fully.  The motion should be granted as to Payne's claims against defendants in their official capacities.

## II.    Background

The following facts are gleaned from the complaint, which are presumed true on a motion to dismiss.

While Payne was incarcerated at the Jackson County Jail, defendants

---

[3] Before Payne obtained an attorney, he filed a response *pro se* to the motion, (ECF No. 38), and defendants filed a reply, (ECF No. 42).  After he obtained an attorney, the undersigned held a telephone conference with counsel and said that Payne's counsel could file a supplemental response to the motion and that defense counsel could then file a reply.  Both a supplemental response, (ECF No. 46), and a reply, (ECF No. 50), were timely filed.

violated his rights under the Eighth and Fourteenth Amendments.  (ECF No. 1, PageID.40).  Payne's allegations as to each defendant are as follows:

- **<u>Broadworth:</u>** Broadworth put either pepper spray or mace on Payne's face towel when it was in the laundry room.  Payne did not realize his towel had been tampered with until he used it after a shower.  When Payne used the towel, it caused his skin to burn and peel.  The chemical also got into his right eye causing lasting problems.  Separately, Broadworth would not allow Payne to make copies or mail legal documents.  (ECF No. 1, PageID.40-41).

- **<u>Silveus:</u>** Silveus treated Payne worse than he treated other inmates.  For example, Silveus would not allow Payne to wash his clothes and shave, even though he allowed other inmates to do so.  Additionally, Silveus falsely claimed that Payne threw a tray at him.  This false allegation led to Payne receiving bagged meals instead of normal meals served on trays.  Finally, Silveus attempted to take away Payne's face towel, which he was keeping in his cell as evidence against Broadworth.  (ECF No. 1, PageID.41).

- **<u>Anderson and Serbantez:</u>** During the incident when Silveus tried to take Payne's face towel, Anderson and Serbantez were directed by Silveus to slam Payne to the ground even though he had done nothing wrong.  (ECF No. 1, PageID.41-42).

- **<u>Miller, Panonne, and Stoetzel:</u>** Miller falsely accused Payne of having

3

contraband because he had bags.  Payne was singled out because even though "everyone else in jail that's lock[ed] up has bags also," he was the only one accused of having contraband.  Because of Miller's accusation, Payne was placed in lockdown for 18 or 20 hours, even though the maximum time permitted under state law is 16 hours.  Miller, Panonne, and Stoetzel were the deputies who put Payne in lockdown.  Additionally, Stoetzel threw away Payne's legal documents and mail causing Payne to lose an appeal and damaging his other pending lawsuits.  (ECF No. 1, PageID.42-43).

- **<u>Townley and Conley:</u>** Townley and Conley gave Payne bagged meals instead of meals on trays because they were the deputies on shift during mealtimes.  (ECF No. 1, PageID.43).

III.    Motion to Dismiss Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

4

(concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

IV.   Discussion

In their motion to dismiss, defendants argue the following: (1) the complaint should be dismissed in its entirety because it does not meet the minimum pleading requirements or state any plausible claims under § 1983; (2) all official capacity claims should be dismissed because Payne failed to plead any unconstitutional policies or customs; and (3) all individual capacity claims should be dismissed because they are barred by qualified immunity.

In the supplemental response, filed by counsel, Payne addresses each of defendants' arguments and maintains that his complaint satisfies the basic pleading requirements.  Payne also alternatively requests leave to file an amended complaint under Federal Rule of Civil Procedure 15(a)(2) so he can "cure whatever defects are present and to include pleadings in avoidance of qualified immunity and containing sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  (ECF No. 46, PageID.279).[4]

---

[4] Defendants argue that Payne's request for leave to amend the complaint is improper because the request was not made in a separate motion with the proposed amended complaint attached.  While there is authority in support of this argument, there is also authority suggesting that leave to amend should be more liberally granted when *pro se* pleadings are at issue, as in this case.  For instance, the Sixth Circuit has acknowledged that it "has more than once remanded a case to allow a pro se plaintiff leave to amend where it was not requested in the district court." *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (collecting cases). Although the request for leave to amend was made by counsel, it is directed at Payne's *pro se* complaint.  As such, the undersigned will consider Payne's request for leave to amend even though it was not raised in a separate motion.

For the reasons that follow, the undersigned recommends that Payne be given leave to amend his complaint in lieu of dismissal of his claims against defendants in their individual capacities. However, Payne's claims against defendants in their official capacities should be dismissed without granting leave to amend.

### A. Individual Capacity Claims

### 1. Sufficiency of the Complaint

Defendants argue that Payne's complaint fails to satisfy the basic pleading requirements under the Federal Rules of Civil Procedure and applicable caselaw.

Although Payne's complaint is lacking in some respects, it is not wholly deficient. For example, as noted above, Payne provides at least some factual allegations as to each defendant. That said, the nature of Payne's claims is not entirely clear. He appears to be asserting punishment claims against Broadworth, Miller, Panonne, and Stoetzel, retaliation and conditions of confinement claims against Silveus, an excessive force claim against Anderson and Serbantez, and access to the courts claims against Broadworth and Stoetzel. It is unclear what the nature of Payne's claims are against Townley and Conley based on the limited allegations as to them in the complaint.

Furthermore, defendants' concerns regarding Payne's status at the time of the relevant events are valid. While the analysis for violations of pretrial

detainees' and incarcerated individuals' constitutional rights is often similar, it is not identical for all constitutional claims. *See Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 727 (6th Cir. 2022) (noting that the Supreme Court had recently "reiterated the principle that pretrial detainees' constitutional status differs from that of convicted prisoners").

Perhaps most importantly for the purposes of this case is the distinction between convicted prisoners and pretrial detainees in the context of punishment claims. For these types of claims, convicted prisoners' claims are brought under the Eighth Amendment's Cruel and Unusual Punishment Clause while pretrial detainees' claims are brought under the Fourteenth Amendment's Due Process Clause. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). As the Supreme Court has explained, this distinction matters because "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically." *Id*. at 400-401 (internal quotation marks and citations omitted).

Additionally, some of Payne's allegations involve a defendant's interference with his legal mail or documents. For instance, Payne alleges that Stoetzel threw away his legal documents and mail, which caused him to lose an appeal and hurt his ability to adequately participate in other pending lawsuits. (ECF No. 1, PageID.42-43). Based on these allegations, it appears that Payne is attempting to assert an access to the courts claim. *See, e.g.*, *Webb v. Harlan Cnty., Ky.*, No.

8

6:19-CV-070-CHB, 2019 WL 5424953, at *4 (E.D. Ky. Oct. 23, 2019)

(considering the plaintiff's allegations as an attempt to state an access to the courts

claim when the plaintiff "complain[ed] that the [facility] was not 'legal friendly,'

he did not have access to a law library, and officials would not let him retrieve

unspecified legal documents from his 'stored jail property' and refused to provide

him with copies, a notary service, stamps, and large manila envelopes").

However, as currently pled, Payne's access to the courts claim would likely

be subject to dismissal.  This is because the Supreme Court has determined "that

the underlying cause of action, whether anticipated or lost, is an element that must

be described in the complaint, just as much as allegations must describe the official

acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

"Like any other element of an access claim, the underlying cause of action and its

lost remedy must be addressed by allegations in the complaint sufficient to give

fair notice to a defendant." *Id*. at 416.  Payne's complaint provides no details

regarding the appeal and lawsuits that were impacted by defendants, meaning he

has failed to put defendants on fair notice.

However, despite these deficiencies, dismissal is not recommended at this

time.  Instead, Payne, who now has the benefit of counsel, should be given the

opportunity to amend his original *pro se* complaint under Federal Rule of Civil

Procedure 15(a)(2), which provides that "[t]he court should freely give leave when

9

justice so requires." Fed. R. Civ. P. 15(a)(2).  This is because " 'where a more

carefully drafted complaint might state a claim, a plaintiff must be given at least

one chance to amend the complaint before the district court dismisses the action

with prejudice.' "  *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634,

644 (6th Cir. 2004) (quoting *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir.

1993)).  In light of Payne's previous status as a *pro se* litigant and the early stage

of litigation, the interests of justice weigh in favor of giving Payne an opportunity

to amend his complaint as to his claims against defendants in their individual

capacities.

2.     Qualified Immunity

In addition to arguing that the complaint fails to satisfy basic pleading

requirements, defendants argue that the individual capacity claims should be

dismissed on the basis of qualified immunity.

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   It gives officials "breathing room

10

to make reasonable but mistaken judgments and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).

When a defendant raises the defense of qualified immunity, the "plaintiff

bears the burden of showing that defendants are not entitled to qualified

immunity." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).  To meet this

burden the plaintiff is "obliged to plead *facts* that, viewed in the light most

favorable to him, make out a violation of a constitutional right so clearly

established in a particularized sense that a reasonable officer confronted with the

same situation would have known that his conduct violated that right."  *Id*.

(emphasis in original).  In addition, the plaintiff's "allegations must demonstrate

that each defendant officer, through his or her own individual actions, *personally*

violated plaintiff's rights under clearly established law."  *Id*. (emphasis in original).

"Generally, qualified immunity is the basis for a summary judgment motion

pursuant to Federal Rule of Civil Procedure 56, not a dismissal under Federal Rule

of Civil Procedure 12(b)(6) for failure to state a claim."  *Caddell v. Campbell*, No.

1:19-cv-91, 2020 WL 703951, at *7 (S.D. Ohio Feb. 12, 2020).  Additionally, "the

determination of qualified immunity is usually dependent on the facts of the case,

and, at the pleadings stage of a litigation, there is scant factual record available to

the court."  *Id*. at *8 (internal quotation marks and citations omitted).  Given the

11

factual nature of qualified immunity and the recommendation that Payne be

permitted to amend his complaint, it is not appropriate to address defendants'

qualified immunity argument at this time.

B.  Official Capacity Claims

1.  Legal Standard

"[O]fficial-capacity suits generally represent only another way of pleading

an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502

U.S. 21, 25 (1991); *see also Day v. DeLong*, 358 F. Supp. 687, 704 (S.D. Ohio

2019) ("Claims under 42 U.S.C. § 1983 are, in all respects other than name, claims

against the entity, not against individuals in their official capacity.").

"When a § 1983 claim is made against a municipality, the Court must

analyze two distinct issues: (1) whether Plaintiff's harm was caused by a

constitutional violation; and (2) if so, whether the municipality is responsible for

that violation." *Johnson v. Piper*, No. 4:21-CV-P89-JHM, 2021 WL 4944044, at

*2 (W.D. Ky. Oct. 22, 2021) (citing *Collins v. City of Harker Heights*, 503 U.S.

115, 120 (1992)).  "A municipality cannot be held responsible for a constitutional

deprivation unless there is a direct causal link between a municipal policy or

custom and the alleged constitutional deprivation." *Johnson v. Piper*, at *2 (citing

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

Importantly, § 1983 "does not permit a municipal entity to incur liability under a

theory of *respondeat superior*." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

Ultimately, "a local government can be liable for: (1) an officially adopted or promulgated policy, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); (2) a custom or practice that is not formally adopted but is pervasive and long-standing, *id*.; (3) a failure to train, supervise, discipline, or adequately screen, *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); or (4) a particular decision or act made by a final policymaker, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)." *Shepherd v. Metz*, No. 17-CV-11063, 2017 WL 11046664, at *5 (E.D. Mich. Aug. 2, 2017).

## 2.    Application

Here, Payne has not plead any allegations against Jackson County.  His complaint contains only allegations against defendants in their individual capacity. For example, Payne did not allege that any harm he suffered was the result of a custom or policy implemented by Jackson County, nor did he name a specific policy or custom.  *See Bartley v. Kenton Cnty. Med. Staff*, No. 21-140-DLB, 2021 WL 5281592, at *2 (E.D. Ky. Nov. 12, 2021) ("Because a county government is only responsible under § 1983 when its employees cause injury by carrying out the county's formal policies or practices, *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978), a plaintiff must specify the county policy or custom which he

alleges caused his injury."); *see also Vogle v. Goard*, No. 5:21-CV-P98-TBR, 2021 WL 5496858, at *2 (W.D. Ky. Nov. 23, 2021) ("Even reading the complaint liberally, the Court finds Plaintiff has not alleged a Marshall County custom or policy of denying him his constitutional rights."); *Strand v. Harville*, No. 2:21-CV-159-RLJ-CRW, 2021 WL 5500797, at *3 (E.D. Tenn. Nov. 23, 2021) ("Here, Plaintiff has not suggested that his rights were violated pursuant to a policy or regulation of Grainger County, and therefore, he has failed to state a claim for municipal liability.").

Payne argues that he has adequately pleaded municipal liability because defendants' "egregious actions . . . were done during their course of employment at the Jackson County Jail and while under the supervision and control of their employer Jackson County." (ECF No. 46, PageID.274). This is insufficient. The Sixth Circuit has explained that "liability must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). Additionally, "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." *Miller*, 408 F.3d at 816. Moreover, Payne only requested the opportunity to "cure whatever defects are present and to include pleadings in avoidance of qualified immunity and containing sufficient factual matter, accepted as true, to state a claim for relief that is plausible

14

on its face." (ECF No. 46, PageID.279).  This request makes no mention of Payne's official capacity claims.

In sum, "under § 1983, local governments are responsible only for 'their *own* illegal acts.' " *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "They are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60.  In other words, a municipality like Jackson County "cannot be held liable *solely* because it employs a tortfeasor[,]" *Monell*, 98 U.S. at 691 (emphasis in original), nor because it "hired one 'bad apple[,]' " *Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).  Thus, Jackson County cannot be held liable for the alleged tortious acts of its deputies and the official capacity claims should be dismissed.

## V.    Conclusion

For the reasons stated above, it is RECOMMENDED that the motion to dismiss, (ECF No. 24), be GRANTED IN PART and DENIED IN PART.  If this recommendation is adopted, Payne's claims against defendants in their official capacity would be dismissed, but he would be given leave to file an amended complaint within a reasonable time frame to articulate his claims more fully against defendants in their individual capacities.

Dated: June 6, 2023
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

16

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 6, 2023.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager

17